IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) DANNY YELTON, as Special Administrator of the Estate of LESLEY SARA HENDRIX, a/k/a LESLEY SARA YELTON, deceased,<br><br>         Plaintiff,<br><br>vs.<br><br>(1) BOARD OF COUNTY COMMISIONERS OF CANADIAN COUNTY;<br><br>(2) TURN KEY HEALTH CLINICS, LLC;<br><br>(3) SHERIFF CHRIS WEST, in his individual and official capacity;<br><br>(4) CANADIAN COUNTY SHERIFF'S OFFICE;<br><br>(5) KRISTIE CARTER; in her individual and official capacity;<br><br>(6) JOHN DOES 1-10, presently unknown employees, agents, and representatives of Canadian County Sheriff's Department and/or Turn Key Health Clinics, LLC;<br><br>         Respondent. | Case No.: 5:21-CV-1001-G<br><br><br><br><br><br><br><br><br><br><br><br>ATTORNEY LIEN CLAIMED<br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

**COMES NOW**, the Plaintiff, Danny Yelton as the Special Administrator of the Estate of Lesley Hendrix, deceased, and for his Second Amended Complaint against Defendants, alleges and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Danny Yelton ("Yelton") is a citizen of Oklahoma, residing in Canadian County. He was the husband of Lesley Hendrix at the time of her death.

2. Defendant Chris West is, and was at all times relevant hereto, the Sheriff of Canadian County, Oklahoma and acting under color of state law.

3. Defendant Board of County Commissioners of Canadian County ("BOCC") is a statutorily- created governmental entity. 57 O.S. §41 provides that every county, by authority of the Board of County Commissioners and at the expense of the county, shall have a jail or access to a jail for safekeeping of prisoners lawfully committed. BOCC must discharge its responsibilities to the Canadian County Detention Center in a constitutional manner.

4. Defendant Turn Key has its primary offices in Oklahoma County, and is doing business in Canadian County, Oklahoma and was at all times hereto responsible, in part, for providing medical services to Hendrix while she was in the custody of the Detention Center of the Canadian County Sheriff's Office (hereinafter "Jail"). Turn Key was additionally responsible, in part, for creating and implementing policies, practices and protocols that govern the medical health are to detainees at the Canadian County Jail and for training and supervising its employees. Turn Key was, at all relevant times, endowed by Canadian County with powers or functions governmental in nature such that Turn Key became an agency or instrumentality of the State and subject to its constitutional limitations.

5. Defendant Kristie Carter ("Carter") is, and was at relevant times, the Jail Administrator and her actions were in both her official and individual capacity and she acted under color of state law.

6. Upon information and belief, at all times relevant the Defendant John Does 1-10 ("John Does") were employes, agents, and representative s of either the Sheriff's Office or Turn Key, are believed to be residents of Canadian County and were acting under color of state law.

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Eighth Amendment and Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. §1983 which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

8. The jurisdiction of this Court is also invoked under 28 U.S.C. §1331 to resolve a controversy arising under the Constitution and the laws of the United States, particularly the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

9. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367 since the claims form part of the same case or controversy arising under the United States Conditions and federal law.

10. Venue is proper under 28 U.S.C. §1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

11. Notice was given to Canadian County Sheriff's Office, Canadian county Detention Center, Board of County Commissioners for Canadian County and Canadian County

Sheriff Chris West on January 11, 2021, pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. §156.

12. By operation of law, this claim was deemed denied on April 6, 2021.

13. This action was timely filed within 180 days of April 6, 2021, and therefore the claims filed under the Governmental Tort Claims Act herein are timely filed pursuant to 51 O.S. §157.

## OPERATIVE FACTS

14. Beginning in January 2016 and continuing until her death, Lesley Hendrix ("Hendrix") was a pretrial detainee at the Canadian County Detention Center ("Jail").

15. Hendrix had been denied bail. She was never tried or convicted of any criminal offense while incarcerated.

16. During her nearly five-year period of confinement, Hendrix and Yelton tried to speak to one another every day. Hendrix and her mother, Barbara Gallagher ("Gallagher"), spoke roughly 3-4 times per week.

17. During this period of confinement, the jail limited her access or possession to sanitary and hygiene products and would do little to help keep her cell clean. Hendrix had resorted to using products not used for cleaning such as denture tablets to scour the filth in her cell.

18. During this period of confinement, Hendrix was personally financially responsible for buying body soap, hair products and feminine hygiene products.

19. During this period of confinement, Hendrix was frequently denied basic needs such as showers and bathing.

20. During this period of confinement, Hendrix developed and had severe anxiety for which she was prescribed medication. Medications were passed on a daily basis, upon information and belief, by a registered nurse employed by Turn Key. This required a Turn Key employee to personally observe Hendrix daily.

21. Beginning sometime in the first week of October 2020, i.e., on or near October 4, 2020, Hendrix developed a rash on her legs. She reported this rash to Turn Key and/or Jail personnel. Nothing was done to address this condition.

22. On or near October 4, 2020 (approximately one week before her death), Hendrix told both Gallagher and Yelton during visits that she was not feeling well. She told them she was experiencing nausea, severe pain, dizziness and vomiting.

23. Hendrix requested to see medical staff either from Turn Key and/or Jail officers employed at the jail. This included Hendrix speaking to the medications nurse who delivered Hendrix's anxiety and mental illness medications.

24. Hendrix was denied any evaluation or treatment for the rash she had developed when she complained.

25. The Turn Key records indicate it provided no medical services or treatments to Hendrix in the month preceding her death.

26. Hendrix was told by Turn Key and/or Jail officers that the only way she could receive treatment would be to make an appointment at the computer kiosk. These people would not permit her to make an appointment orally.

27. The appointment kiosk Hendrix was instructed to use to schedule an appointment was broken. No other means of scheduling an appointment were given to her by Turn Key and/or Jail officers.

28. During the time that the medications were passed, Hendrix informed the RN and a tech that the kiosk was broken and that she needed medical care.

29. Hendrix pleaded with a Jailer about getting an appointment to see a physician. This Jailer told Hendrix he would provide her a written request form for medical treatment, but never did so.

30. Turn Key made no effort to reach out to evaluate Hendrix despite its employees-- nurses and/or other purported medical providers—knowledge of her preliminary and later advanced symptoms of serious medical need.

31. On October 10, 2020, Hendrix had a video visit with Yelton. Hendrix was incoherent, had difficulty standing, and was acting erratically. Hendrix told Yelton that she felt like she "was dying."

32. On that same date, Gallagher had a video conference with Hendrix. Gallagher observed that Hendrix looked very ill, including looking very pale and having black circles and bags under her eyes. Hendrix had difficulty standing up and would often lean against a wall or fall to the floor.

33. Immediately following the video conference, described in the previous paragraph, Gallagher telephoned the Jail and informed it that Hendrix needed immediate medical attention. Upon information and belief, nothing was done in response.

34. Yelton and Gallagher both attempted to contact Hendrix several times during the latter part of her incarceration but were unsuccessful. Hendrix told them both on October 10, 2020, she was too ill and incapacitated to respond.

35. At some point in the early afternoon on October 11, 2020, Yelton, who had access to a radio scanner, overheard that an ambulance had been dispatched to the Jail in order to take a "37-year-old woman" to the hospital. Yelton had a bad feeling this was Hendrix.

36. Yelton called the Jail to get information about Hendrix. The Jail did not answer the telephone.

37. On October 11, 2020, it appears Hendrix collapsed and was found "down". It was only then that Turn Key and/or the Jail arranged for Hendrix to be transported to the hospital. This despite Jail and Turn Key employees would have observed Hendrix every day, while she was pale, incoherent, having difficulty standing, and otherwise in grave distress.

38. Upon arrival to the hospital in Yukon, Oklahoma, Hendrix was in critical condition. The medial staff noted that Hendrix was in acute respiratory distress, metabolic acidosis, and severe septic shock. Medical staff also noted that Hendrix smelled as if she had defecated herself. This was incorrect. The smell was due to necrotizing fasciitis.

39. Hendrix was at one point verbal in the emergency room and did not complain of head pain or head injury. CT scan confirmed no injury to her head.

40. During the hospital medial assessment, hospital staff found Hendrix had an enormous black, bulging wound to her perineum, lower abdomen, buttocks and genitals. The sepsis and wound were caused by necrotizing fasciitis, commonly referred to as "flesh eating bacteria".

41. All emergency and surgical interventions were unsuccessful. Hendrix died the following morning on October 12, 2020, in the intensive care unit at the hospital.

42. Hendrix both subjectively and objectively demonstrated she was suffering from a serious medical condition, the least of which being she was emanating a strong odor of her skin and soft tissue rotting from her body.

43. Had the Defendants promptly, appropriately, and responsibly intervened in her care, Hendrix would not have died and would have recovered from her medical condition.

44. Jail personnel would disregard or disbelieve inmate complaints of medical problems/lack of medical attention, or everyday needs they may have. In this regard, in January 2020, ten months before Hendrix died, a telephone conversation between her aunt and Sheriff West was held, which was recorded. The following was stated:

    a. Sheriff West stated that Hendrix needed to count "her lucky stars" for the treatment she received at the Jail and her aunt needed to understand that Hendrix was in jail and not a "Holiday Inn".

    b. Sheriff West represented that the Jail is run by Carter, the Jail administrator, and he had given "carte blanche" responsibility to the operation of the Jail to that individual;

    c. Sheriff West was not going to "micromanage" the Jail, and that he was going to do what Carter, the Jail administrator, wants to do;

    d. Sheriff West suggested that Hendrix was lying to her aunt about her living conditions;

    e. Sheriff West discounted the aunt's standing up for Hendrix, telling the aunt that she was "not even [Hendrix's] mother";

    f. Sheriff West acknowledges he is ultimately responsible for the jail because he is getting sued repeatedly;

    g. Sheriff West stated there was so much overcrowding at the Jail, that on the men's side the inmates are on bunks on top of each other;

    h. Sheriff West did not want to even discuss uncleanliness of jail cells; and

    i. Female inmates were locked in their cells 23 out of 24 hours of each day.

**FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**VIOLATION OF LESLEY HENDRIX'S CIVIL RIGHTS ARISING**
**UNDER THE FOURTEENTH AMENDEMENT (42 U.S.C. §1983)**

For the First Cause of Action against the Defendants, the Plaintiff adopts and re-alleges all of the allegations above as if fully set forth herein and further alleges and states as follows:

45. Lesley Hendrix sustained personal injuries and died as a result of Defendants' conduct described herein.

46. The Sheriff of Canadian County ("Sheriff") is and was the duly elected official responsible for the policies and procedures, as well as the actions of the employees of the Canadian County Sheriff's Office.

47. The deliberate indifference to Plaintiff's serous medical needs, as summarized herein, was in furtherance of and consistent with policies, customs, and/or practices which the Sheriff promulgated, created and implemented or for which he was responsible.

48. There are longstanding, systemic deficiencies in the medical health care provided to those in the Jail. Sheriff West knew of these deficiencies and the substantial risks to inmates like Hendrix but failed to take reasonable steps to alleviate those deficiencies and risks.

49. On information and belief, Hendrix was not properly assessed for medical needs and conditions upon detention at the jail.

50. Despite Hendrix's obvious, serious, emergent medical health needs, the Defendant and their employees did not transport Hendrix to a hospital, physician, or other facility nor did they take any action to provide proper care to Hendrix.

51. Defendants, at all times, acted with deliberate indifference to Hendrix's serious medical needs, in violation of her constitutional rights.

52. Hendrix's constitutional rights were violated due to the policy or custom of the Defendant, the Sheriff of Canadian County, and/or the Board of Commissioners including but not limited to:

    a. A custom or policy of providing inadequate medical care;

    b. A custom or policy of failing to properly assess patients for serious medical needs;

    c. A custom or policy of failing to provide any medical care;

    d. A custom or policy of failing to properly train employees in the provisions of medical care;

    e. A custom or policy of failing to supervise patients that demonstrate serious medical conditions and/or needs;

    f. A custom or policy of failing to respond to emergent needs due to contracts associated with the provision of medical care to detainees or inmates;

    g. A custom or policy of improperly delegating the medical care of inmates to others that are not properly qualified to provide constitutionally sufficient medical care;

    h. A custom or policy of failing to have adequate guidelines for standards of medical care;

    i. A custom or policy of not staffing the detention center with sufficient properly qualified staff to manage, monitor, or treat the conditions of inmates with complex or serious mental health or physical needs;

j.  A custom or policy of severely limiting the use of off-site medical and diagnostic service providers even in emergent situations in disregard to known, obvious, or excessive risks to the health and safety of detainees and/or inmates;

k.  Further customs or policies that resulted in the violation of Hendrix's rights.

53. Defendants had an affirmative duty to assess, observe, and provide medical care to Hendrix and Defendant failed to uphold that duty.

54. The actions of the Defendants described constitute a denial of medical care in violation of the rights of Hendrix as guaranteed to her by the Due Process clause of the Fourteenth Amendment to the United States Constitution.

55. The Defendants acted with deliberate indifference to a serious and known medical need of Hendrix by denying her proper medical care.

56. The actions of the Defendants and their employees were taken pursuant to the policies or customs of the Defendants set forth, and therefore, Defendants shall be liable to Plaintiff for the violation of Hendrix's rights.

57. As a direct and proximate result of the Defendants' actions, the Plaintiff suffered damages, including but not limited to the loss of her life and the grief, pain and suffering and emotional distress her survivors are entitled to recover.

**SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
SUBSTATIVE DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT
(42 U.S.C. §1983)**

For the Second Cause of Action against the Defendants, the Plaintiff adopts and re-alleges all of the allegations above as if fully set forth herein and further alleges and states as follows:

58. Hendrix was an incarcerated, pretrial detainee in the Jail. Her only source of medical care was whatever Turn Key provided while under the direction and supervision of the government defendants.

59. The Defendants' liability is established by the "special relationship" between themselves and Hendrix, as well as their creation of the danger, that imposes onto them a duty to protect Hendrix's right to care and safety.

60. The living conditions at the Jail were filthy and deplorable, and the jail failed to provide Hendrix adequate cleaning materials and basic hygiene items which rendered the conditions and circumstances suitable for the development of illness and disease.

61. Necrotizing fasciitis is a devastating medical condition that develops from the conditions and circumstances discussed in the previous paragraph.

62. Defendants owed a duty to Hendrix to use reasonable measures or to provide her with appropriate assessment, evaluation, treatment and supervision.

63. Defendants' breaches of their duty of care include but are not limited to the failure to provide adequate or timely physical health evaluation of Hendrix, failure to provide any assessment of Hendrix's physical condition, failure to provide timely or adequate medical treatment for Hendrix.

64. The Defendants, each of them, showed deliberate indifference to Hendrix's medical needs while she was a pretrial detainee. This deliberate indifference to her substantial and grave illness (necrotizing fasciitis) she developed while incarcerated in the Jail resulted in unsafe and life-threatening conditions and led to the destruction of her right to bodily integrity.

65. The actions of the Defendants described herein constitute a denial of Hendrix's right to substantive due process, as guaranteed to her by the Fourteenth Amendment of the United States Constitution.

66. The illness and disease process associated with necrotizing fasciitis would be known to any layperson.

67. The Defendants grossly negligent, reckless, and intentional state of mind and refusal to meet Hendrix's basic medical needs resulted in their consciously disregarding an obvious excessive risk to her health and safety.

68. Ignoring numerous verbal pleas for help from Hendrix and Gallagher about Hendrix's deteriorating health, as well as her obvious subjective and objective physical signs of illness, is conscience shocking.

69. The actions of the Defendants and their employees were taken pursuant to their policies or customs as set forth and therefore Defendants shall be liable to Plaintiff for violation of Hendrix's rights.

70. The actions of the Defendants, coupled with their culpable state of mind in their denial of Hendrix's life, liberty, and/or property is shocking to the conscience and therefore in violation of the rights due and owed to her under the Constitution.

## THIRD CAUSE OF ACTION-
## VIOLATION OF ARTICLE II §§ 7 AND 9 OF THE CONSTITUTION OF THE STATE OF OKLAHOMA

For the Third Cause of Action against the Defendants, the Plaintiff adopts and re-alleges all of the allegations above as if fully set forth herein and further alleges and states as follows:

71. Pretrial detainees, who have not been convicted of a crime, have a constitutional right to medical care under the Due Process Clause of the Fourteenth Amendment at least as protective as for convicted inmates.

72. As described herein, Plaintiff's decedent while in the custody of the Canadian Count Sheriff's Office was denied necessary medical treatment. Defendants violated Plaintiff's rights by failing to provide her with prompt and adequate medical assessment, evaluation, treatment and supervision despite the obvious need.

73. Plaintiff's decedent was injured and suffered damages as alleged herein as a direct and proximate cause of the Defendants' violations of her rights under the Oklahoma Constitution.

74. At all times relevant herein, the Canadian County Sheriff's Office and Turn Key personnel were acting within the scope of their employment and under the supervision of and ultimate control of Defendant West, the Sheriff of Canadian County.

75. Defendants' denial of medical care and treatment to Plaintiff's decedent violated Article II § 7 and 9 of the Constitution of the State of Oklahoma and was a direct and proximate cause of her injuries and damages.

76. Sheriff West and/or BOCC and Turn Key are vicariously liable for the violations of the Oklahoma Constitution by employees and agents acting within the scope of their employment.

**FOURTH CAUSE OF ACTION AGAINST INDIVIDUALLY NAMED DEFENDNTS TORT CLAIM**

For the Fourth Cause of Action against the Defendants, the Plaintiff adopts and re-alleges all of the allegations above as if fully set forth herein and further allege and states as follows:

77. Individual Defendants/Employees Turn Key, Sheriff West and John Does 1-10 complained of conduct was with knowledge, reckless, malicious and otherwise of such a degree as to deprive them of any protection of the GTCA.

78. Individual Defendants/Employees are therefore individually liable in tort to the Plaintiff for their gross negligence, and intentional infliction of emotional distress.

79. The Plaintiff is entitled to recover actual and punitive damages, and any other relief allowable by law against the Individual Defendants/Employees.

### FIFTH CAUSE OF ACTION AGAINST SHERIFF WEST
### SUPERVISOR LIABILITY/OFFICIAL CAPACITY LIABILITY (42 U.S.C. §1983)

For the Fifth Cause of Action against the Defendant Chris West, the Plaintiff adopts and re-alleges all of the allegations above as if fully set forth herein and further allege and states as follows:

80. There is an affirmative link between the aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Plaintiff's serious medical needs, health and safety and policies, practices and/or customs which Defendant Sheriff Chris West promulgated, created, implemented and/or possessed responsibility for (*See* ¶¶ 27-44, *supra*).

81. Defendant West knew and/or it was obvious that the maintenance of the aforementioned polices, practices and/or customs posed an excessive risk to the health and safety of detainees like Plaintiff.

82. Defendant West disregarded the known and/or obvious risks to the health and safety of detainees like Plaintiff.

83. Defendant West disregarded the known and/or obvious risks to the health and safety of detainees like Plaintiff.

84. There is an affirmative link between the unconstitutional acts of their subordinates and Defendant West's adoption and/or maintenance of the aforementioned policies, practices and/or customs.

85. As a direct and proximate result of the aforementioned polices, practices and/or customs, Plaintiff suffered injuries and damages as alleged herein.

## SIXTH CAUSE OF ACTION-
## MUNICIPAL LIABILITY AS TO TURN KEY (42 U.S.C.§1983)

For the Sixth Cause of Action against the Defendant Turn Key, the Plaintiff adopts and realleges all of the allegations above as if fully set forth herein and further alleges and states as follows:

86. Turn Key is a "person" for purposes of 42 U.S.C.§1983.

87. At all times pertinent hereto, Turn Key was acting under color of state law.

88. Turn Key has been endowed by Canadian County with powers or functions governmental in nature, such that Turn Key became an instrumentality of the State and is subject to its constitutional limitations.

89. Turn Key is charged with implementing and assisting in developing the policies of Sheriff West/Canadian County Sheriff Office with respect to the medical and mental health care of detainees at the Canadian County Detention Center and have shared responsibility to adequately train and supervise its employees.

90. There is an affirmative causal link between the acts and/or omissions described above in being deliberately indifferent to Plaintiff's serious medical needs, health, and safety and violating Plaintiff's civil rights and the customs, policies, and/or practices carried out by Turn Key.

91. Turn Key knew or should have known that these policies, practices and/or customs posed substantial risks to the health and safety of detainees like Plaintiff. Nevertheless, Turn Key failed to take reasonable steps to alleviate those risks in deliberate indifference to detainees, including Plaintiff's, serious medical needs.

92. Turn Key tacitly encouraged, ratified and/or approved of the acts and/or omissions alleged herein.

93. There is an affirmative casual link between the customs, policies and/or practices and Plaintiff's injury and damages alleged herein.

### SEVENTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. §1983
### PLAINTIFF vs. SHERIFF WEST, CARTER AND JOHN DOES

For the Plaintiff's Seventh Cause of Action against Sheriff West, Carter and John Does, the Plaintiff adopts and realleges all of the allegations above as if fully set forth herein and further alleges and states as follows:

94. Sheriff West, Carter, and John Does, in their individual capacities, personally participated in the harmful treatment of Hendrix on October 26-27, 2006.

95. Sheriff West, Carter and John Does, acting under color of law, caused Hendrix to be subjected to the deprivation of her rights, privileges, and immunities secured by the Constitution of the United States and its laws. The acts of these Defendants were recklessly, wantonly, maliciously, knowingly, and/or intentionally in violation of Hendrix's rights and render these Defendants liable in an action at law, suit in equity, or other proper proceedings for redress of the following:  refusing to properly train, supervise and monitor Jail and Turn Key personnel, failing to  have qualified and skilled medical personnel to render urgent or emergency medical care to pretrial detainees,

failing to respond to Hendrix's obvious distress and agonizing pain, failing to timely obtain medical care outside of the Jail, failing to protect Hendrix from circumstances that would cause necrotizing fasciitis to infect detainees/inmates, failing to provide adequate hygiene materials, and other failures to be revealed over discovery.

96. As a result of the unconstitutional and illegal actions by Sheriff West, Carter, and John Does, Hendrix suffered egregious pain and suffering, physical injuries, emotional distress and ultimately her death. The Plaintiff is entitled to compensatory damages from these Defendants for these injuries sustained by Hendrix.

97. Sheriff West's, Carter's and John Does' deliberate indifference to Hendrix's serious medical, psychological and psychiatric needs violated her rights under the Fourteenth Amendment and thus violated 42 U.S.C.§1983.

98. Sheriff West, Carter and John Does exhibited malicious motive and intent and/or demonstrated reckless indifference to Hendrix's federally protected rights and showed deliberate indifference to her serious medical, psychological and psychiatric needs entitling the Plaintiff to an award of punitive damages against them.

## PUNITIVE DAMAGES

For the Punitive Damages claim against Defendants, the Plaintiff adopts and realleges all of the allegations above as if fully set forth herein and further alleges and states as follows:

99. Plaintiff is entitled to punitive damages on her claims brought pursuant to 42 U.S.C.§ 1983 as the Defendants' conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Hendrix's federally protected rights.

100.     Plaintiff is entitled to punitive damages on her tort claims as these Defendants' conduct, acts and omissions alleged herein constitute reckless disregard for Plaintiff's rights.

WHEREFORE, premises considered, the Plaintiff Danny Yelton, prays the Court for a declaration that the conduct engaged in by Sheriff West, Kirstie Carter, and John Does was in violation of Leslie Hendrix's rights; against all Defendants compensatory and punitive damages in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code for injuries such as her substantial pain and suffering, emotional distress, and mental anguish, and humiliation; costs and expenses, including reasonable attorneys' fees provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment; and for any such other legal relief this Court deems just and proper.

          Respectfully submitted,

*/s/ Laurie Koller*

_____
A. Laurie Koller, OBA #16857
Ashley H. Leavitt, OBA #32818
KOLLER TRIAL LAW, PLLC
2504 E. 21st Street, Suite B
Tulsa, OK 74114-1759
O: 918-216-9596
F: 918-248-8238
laurie@kollertriallaw.com
ashley@kollertriallaw.com

          and

Eric Anthony Mareshie, OBA # 18180
E. ANTHONY MARESHIE, PLLC
6528 East 101st Street

                Suite D-1, Box 279
                Tulsa, Oklahoma 74133-6700
                O: 918-519-3771
                F: 918-970-6927
                tulsalegal@gmail.com
                ***Counsel for the Plaintiff***