IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANNY YELTON, as Special Administrator of the Estate of LESLEY SARA HENDRIX a/k/a LESLEY SARA YELTON, deceased,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS OF CANADIAN COUNTY, et. al.,<br><br>Defendants. | Case No. CIV-21-1001-G |

## REPORT AND RECOMMENDATION

Plaintiff filed this action under 42 U.S.C. § 1983 alleging civil rights violations. (Doc. 26). United States District Judge Charles Goodwin referred the matter to United States Magistrate Judge Gary M. Purcell for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 25, at 6). It was subsequently transferred to the undersigned Magistrate Judge. (Doc. 44).

Before the court is Defendant Sheriff Chris West's Partial Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 28), along with Plaintiff's Response (Doc. 36), and Defendant Sheriff West's Reply (Doc. 42). For the reasons set forth fully below, the undersigned recommends that the Motion to Dismiss be **GRANTED in part and DENIED in part.**

I.  **Plaintiff's Second Amended Complaint**

On August 2, 2023, Plaintiff, husband of Lesley Sara Hendrix and special

administrator of her estate, filed a Second Amended Complaint asserting multiple claims arising from the circumstances surrounding Ms. Hendrix's death during her confinement as a pre-trial detainee at the Canadian County Detention Center ("CCDC"). (Doc. 26). Plaintiff named as Defendants the Board of County Commissioners of Canadian County (the "Board"); Sheriff Chris West, in his individual and official capacities; the Canadian County Sheriff's Office; CCDC Jail Administrator Kristie Carter, in her individual and official capacities; Turn Key Health Clinic, LLC; and John Does 1-10. (*Id.* at 2-3). Defendant Turn Key is a third-party contractor that is responsible for providing medical services to those in custody at CCDC. (*Id.* at 2).

In the Second Amended Complaint, Plaintiff sets forth the following allegations. Ms. Hendrix began her confinement as a pre-trial detainee at CCDC in January 2016. (*Id.* at 4). While incarcerated, Ms. Hendrix was responsible for purchasing body soap and feminine hygiene products, and she reported her access to showering, sanitary products, and cleaning supplies was limited. (*Id.*) Ms. Hendrix developed severe anxiety for which she was prescribed medication. (*Id.* at 5). A registered nurse employed by Defendant Turn Key distributed medications on a daily basis. (*Id.*)

During the first week of October 2020, Ms. Hendrix developed a rash on her legs. (*Id.*) She reported this rash to Turn Key and/or CCDC personnel but received no treatment. (*Id.*) On or near October 4, 2020, Ms. Hendrix told her mother, Barbara Gallagher ("Gallagher"), and Plaintiff during visits that she was experiencing nausea, severe pain, dizziness, and vomiting. (*Id.*) Ms. Hendrix requested of CCDC officers and/or Turn Key employees, including the nurse who delivered her daily anxiety medication, to see medical

2

staff. (*Id.*) Turn Key employees and/or CCDC officers told Ms. Hendrix that she must make an appointment at the computer kiosk to receive treatment, but the kiosk was broken. (*Id.*) When medications were distributed, Ms. Hendrix informed the RN, a tech, and a CCDC officer that the kiosk was broken and that she needed medical care. (*Id.* at 6). A CCDC officer told Ms. Hendrix that he would provide her a written request form for medical treatment but never did so. (*Id.*) Turn Key's records indicate it provided no medical services or treatments to Ms. Hendrix in the month preceding her death. (*Id.* at 5).

On October 10, 2020, Plaintiff spoke via video call with Ms. Hendrix, who stated that she felt like she "was dying." (*Id.* at 6). Plaintiff observed that Ms. Hendrix was incoherent, had difficulty standing, and was acting erratically. (*Id.*) On the same date, Gallagher had a video conference with Ms. Hendrix during which Gallagher observed that Ms. Hendrix looked very ill and had difficulty standing up. (*Id.*) Immediately following the video conference, Gallagher telephoned CCDC to report that Ms. Hendrix needed immediate medical attention. (*Id.*) Upon information and belief, neither CCDC nor Turn Key employees responded to this report. (*Id.*)

On October 11, 2020, Hendrix collapsed and was found "down." (*Id.* at 7). Defendant Turn Key and/or CCDC arranged for Ms. Hendrix to be transported to the local hospital. (*Id.*) Upon arrival, Ms. Hendrix was in critical condition, experiencing acute respiratory distress, metabolic acidosis, and severe septic shock. (*Id.*) Medical staff noticed a strong odor and discovered the smell was emanating from an enormous black, bulging wound to her perineum, lower abdomen, buttocks, and genitals. (*Id.*) The sepsis and wound were caused by necrotizing fasciitis, commonly referred to as "flesh eating

bacteria." (*Id.*)  All emergency and surgical interventions were unsuccessful, and Ms. Hendrix died the following morning on October 12, 2020, in the hospital's intensive care unit. (*Id.*)

In January 2020, ten months before Ms. Hendrix died, Ms. Hendrix's aunt recorded a telephone conversation between herself and Defendant Sheriff West. (*Id.* at 8). During that conversation, Defendant Sheriff West stated, *inter alia*, that Defendant Carter, the Jail Administrator, runs CCDC and he had given her "carte blanche" responsibility to operate CCDC. (*Id.*)  However, he later acknowledged that he was ultimately responsible for CCDC because he was getting sued repeatedly. (*Id.*)  Defendant Sheriff West suggested Ms. Hendrix was lying about her living conditions and refused to discuss the uncleanliness of the jail cells, but he admitted that female inmates were locked in their cells 23 out of 24 hours each day. (*Id.* at 8-9).

Following Ms. Hendrix's death, Plaintiff initiated the current lawsuit on behalf of her estate. (Doc. 1).  Plaintiff asserts the following claims against Defendant Sheriff West under 42 U.S.C. § 1983:

- deliberate indifference to serious medical needs in violation of the Fourteenth Amendment (First Cause of Action) (Doc. 26, at 9-11);
- deprivation of substantive due process in violation of the Fourteenth Amendment (Second Cause of Action) (*id*. at 11-13);
- "supervisor liability/official capacity liability" for deliberate indifference to "serious medical needs, health and safety and policies, practices and/or customs" (Fifth Cause of Action) (*id*. at 15-16); and
- individual capacity liability for deliberate indifference to serious medical, psychological, and psychiatric needs (Seventh Cause of Action) (*id*. at 17-18).

Additionally, Plaintiff asserts the following claims against Defendant Sheriff West under

4

Oklahoma law:

- violations of Article II, Sections 7 and 9 of the Oklahoma Constitution[1] (Third Cause of Action) (*id*. at 13-14); and
- gross negligence and intentional infliction of emotional distress under the Oklahoma Governmental Tort Claims Act ("OGTCA") (Fourth Cause of Action) (*id*. at 14-15).

In Defendant Sheriff West's Partial Motion to Dismiss, he argues that (1) Plaintiff does not have an actionable substantive due process claim; (2) he is immune from suit for Plaintiff's state law claims; and (3) punitive damages are not available against him in his official capacity. (Doc. 28).

## II. Standard of Review

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether <u>the plaintiff's complaint alone</u> is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) (emphasis added). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at

---

[1] The Oklahoma Constitution, Article II, Section 7 states: "No person shall be deprived of life, liberty, or property, without due process of law." Section 9 states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."

556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). In applying this standard, the court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct," then the plaintiff has not "nudged (his) claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id*. at 1248.

### III. Plaintiff's Substantive Due Process Claim Should Be Dismissed.

Plaintiff's First Cause of Action asserts against all Defendants a claim for deliberate indifference to serious medical needs. (Doc. 26, at 9-11). A claim by a pre-trial detainee that prison officials denied her medical attention arises under the Fourteenth Amendment, although the relevant analysis is the two-part inquiry of the Eighth Amendment, applicable to convicted inmates. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs.*, 973 F.3d 1022, 1028 (10th Cir. 2020); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "A claim for

6

inadequate medical attention will be successful if the plaintiff shows 'deliberate indifference to serious medical needs.'" *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). This exercise requires both an objective and a subjective inquiry.

> The objective inquiry asks whether the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause of the Eighth Amendment. The subjective inquiry, in turn, asks whether the defendants knew [the detainee] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.

*Quintana*, 973 F.3d at 1028-29 (internal citations and quotation marks omitted).

Plaintiff's Second Cause of Action is a substantive due process claim against all Defendants under the Fourteenth Amendment based on essentially the same factual allegations about deliberate indifference to Ms. Hendrix's serious medical needs as asserted in the First Cause of Action. (Doc. 26, at 11-13). The Supreme Court has explained that "'[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). The Court further explained,

> *Graham* "does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather, *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."

7

*Id.* at 843 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (reviewing plaintiff's claims for denial of medical care in prison under the Eighth Amendment and not as a substantive due process claims because "where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process").

Substantive due process analysis is therefore inappropriate in this case because Plaintiff's claim based on deliberate indifference to serious medical needs is clearly "covered by" the Eighth Amendment, as discussed above. Accordingly, Plaintiff's Second Cause of Action asserting a separate Fourteenth Amendment substantive due process claim based on the same deliberate indifference claims should be dismissed against all Defendants for failure to state a claim.

### IV. Plaintiff's State Law Claims Against Defendant Sheriff West in His Official Capacity Should Be Dismissed Under the OGTCA.

Plaintiff asserts Oklahoma state law claims against Defendant Sheriff West for violations of Article II, Sections 7 and 9 of the Oklahoma Constitution and gross negligence and intentional infliction of emotional distress. (Doc. 26, at 14-15). Defendant Sheriff West requests dismissal of these claims based on state law immunity under the Oklahoma Governmental Tort Claims Act ("OGTCA"). (Doc. 28, at 9).

The OGTCA provides that "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment . . . shall be immune from liability for torts." Okla. Stat. tit. 51, § 152.1(A). Under the OGTCA, a county is a political

subdivision of the state. Okla. Stat. tit. 51, § 152(11)(c). In naming Defendant Sheriff West in his official capacity, Plaintiff has effectively asserted his state law claims against Canadian County. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent."); *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) ("To the extent [plaintiff] brings a claim against [the sheriff] in his official capacity, it is the same as bringing a suit against the county."); *Brashear v. Tulsa Bd. of Cnty. Comm'rs*, 2016 WL 633374, at *5 (N.D. Okla. Feb. 17, 2016) ("Plaintiff's claims against the Board and the sheriff in his official capacity both equate to actions against [the] County. In short, they are two ways of pleading the same claim.") (citations omitted); Okla. Stat. tit. 19, § 4 (providing that a "[s]uit may be brought against a county by naming a county officer identified in Section 161 of this title when it is alleged that such officer in his or her official capacity is directly or vicariously liable to plaintiff in an action not arising out of contract"); Okla. Stat. tit. 19, § 161(1) (defining "County officer" as including a county sheriff).

As defined in the OGTCA, a "tort" is "a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise, resulting in a loss to any person . . . as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment." Okla. Stat. tit. 51, § 152(14). *See Barrios v. Haskell Cnty. Pub. Facilities Auth.*, 432 P.3d 233, 238 (Okla. 2018) (explaining that the Oklahoma Legislature

amended the OGTCA in 2014 "to specify that the State's immunity from suit extended even to torts arising from alleged deprivations of constitutional rights").

It is specifically provided that "[t]he state or a political subdivision shall not be liable if a loss or claim results from . . . [p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." 51 Okla. Stat.. § 155(25). The Oklahoma Supreme Court has explained that the state and its political subdivisions cannot be held liable

> for any loss or injury, whether to an inmate or other person, resulting from the operational level acts required to furnish the services of a penal institution, including . . . the food, clothing, items for hygiene and other basic personal items needed by inmates or other persons; the educational, rehabilitative, communicational, recreational and medical and health services or any other service provided for inmates or other persons . . . ."

*Medina v. State*, 871 P.2d 1379, 1384 n.13 (Okla. 1993).

Plaintiff's factual allegations in support of his state law claims against Defendant Sheriff West in his official capacity clearly arise from the alleged failure to provide medical care and/or items for hygiene and other basic personal items to a pre-trial detainee housed in a county jail. Because the OGTCA expressly exempts Canadian County from tort liability for these claims, and suing Defendant Sheriff West in his official capacity is merely another means of suing Canadian County, the court should grant Defendant Sheriff West's request to dismiss Plaintiff's state law claims against him in his official capacity for failure to state a claim.[2]

---

[2] In light of the foregoing recommendation, it is not necessary to address Defendant Sheriff West's argument that he is immune from punitive damages in his official capacity. (Doc. 28, at 12-13).

10

## V. Defendant Sheriff West in His Individual Capacity Is Not Entitled to OGTCA Immunity Against Plaintiff's State Law Claims.

Defendant Sheriff West also requests dismissal of Plaintiff's state law claims asserted against him in his individual capacity. (Doc. 28, at 9-12). Defendant Sheriff West asserts these claims are barred by the OGTCA because he was necessarily acting within the scope of his employment and therefore, he is immune from suit. (*Id.* at 10-12).

The OGTCA states, in relevant part, "[i]n no instance in any [action alleging tort liability] shall an employee of the state or of a political subdivision of the state acting within the scope of employment be named as defendant; provided, however, such person may be named as defendant under alternative allegations that such person did not act within the scope of employment." Okla. Stat. tit. 51, § 153(C). The OGTCA defines scope of employment as:

> performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . but shall not include corruption or fraud[.]

Okla. Stat. tit. 51, § 152(12). "An act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith." *Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003).

Defendant Sheriff West asserts that because any duties owed to Ms. Hendrix existed only due to his own employment responsibilities, Plaintiff's claims are "scope of employment" claims barred by the OGTCA. (Doc. 28, at 10-11 (citing *Cooper v. Millwood Indep. Sch. Dist. No. 37*, 887 P.2d 1370, 1374-75 (Okla. Civ. App. 1994)). He further contends that Plaintiff's Second Amended Complaint "is devoid of any non-conclusory

11

allegation of fact indicating that Defendant West acted maliciously or in bad faith . . . or that he otherwise acted outside the scope of his employment." (*Id.* at 10).

In his Response, however, Plaintiff notes the following specific allegations included in his Second Amended Complaint that he contends support a plausible claim that Defendant Sheriff West acted outside the scope of his employment: (1) Defendant Sheriff West delegated the entirety of his duties pertaining to operating the CCDC to his Jail Administrator; (2) Defendant Sheriff West stated that he refused to "micromanage" the CCDC and would instead do whatever the Jail Administrator instructed; (3) he refused to discuss CCDC conditions; (4) he told Ms. Hendrix's aunt that Ms. Hendrix was lying about jail conditions; and (5) he allowed female inmates to be locked in their cells 23 out of 24 hours each day, thereby preventing knowledge of Ms. Hendrix's condition to be more widely known. (Doc. 26, at 8-9; Doc. 36, at 28-29).

The factual allegations presented by Plaintiff — particularly with regard to Defendant Sheriff West's purposeful ignorance regarding CCDC conditions and operations — "raise an inference of bad faith sufficient to withstand dismissal pursuant to the [OGTCA]." *Romero v. City of Miami*, 8 F. Supp. 3d 1321, 1333 (N.D. Okla. 2014) (considering allegations that defendants acted in bad faith because they had prior notice that a policy was unconstitutional but continued the policy); *cf. Gowens v. Barstow*, 364 P.3d 644, 652 (Okla. 2015) (rejecting the proposition that "malice or bad faith can never be inferred from conduct exhibiting reckless disregard for the rights of others"); *Shephard v. CompSource Okla.*, 209 P.3d 288, 293 (Okla. Civ. App. 2009) ("[A]cts contrary to the interests of the employer are not within the scope of employment.").

12

Moreover, this court has repeatedly noted that "while [the scope-of-employment] issue may be adjudicated upon consideration of a summary judgment motion, it cannot properly be determined in a motion to dismiss." *Pendergraft v. Bd. of Regents of Okla. Colls.*, No. CV-18-793-D, 2019 WL 3806639, at *6 (W.D. Okla. Aug. 13, 2019) (quotation marks omitted); *accord Melton v. Okla. ex rel. Univ. of Okla.*, 532 F. Supp. 3d 1080, 1092 (W.D. Okla. 2021). "Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1163 (Okla. 2009); *see also Nail v. City of Henryetta*, 911 P.2d 914, 918 (Okla. 1996) (same). As explained above, Plaintiff has alleged facts plausibly showing Defendant Sheriff West was not acting in good faith when he abdicated responsibility for oversight of the jail. Because "different conclusions could be drawn as to whether [Defendant] acted in good faith," his request for dismissal in his individual capacity based on OGTCA immunity should be denied. *Melton,* 532 F. Supp. 3d at 1092.

## VI. The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Constitutional Claims Because the Law Is Unsettled.

Plaintiff contends Defendant Sheriff West violated Ms. Hendrix's rights pursuant to Article II, Sections 7 and 9 of the Oklahoma Constitution. (Doc. 26, at 13-14). Article II, Section 7 of the Oklahoma Constitution guarantees due process of law, while Article II, Section 9 prohibits cruel and unusual punishment. Because the undersigned finds that Plaintiff's state law claims against Defendant Sheriff West in his individual capacity can not be dismissed pursuant to OGTCA immunity at this juncture, the court must consider

the status of Plaintiff's state constitutional claims. However, Oklahoma law is unsettled as to whether a private cause of action based on a state constitutional violation exists when an individual does not have immunity under the OGTCA.

In *Barrios v. Haskell County Public Facilities Authority*, the Oklahoma Supreme Court considered the following certified question:

> The Governmental Tort Claims Act renders the State immune from any tort suit arising out of the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." Do Sections 7 and 9 of Article II of the Oklahoma Constitution nonetheless allow an inmate to bring a tort claim for denial of medical care?

432 P.3d at 235. The *Barrios* court held that the OGTCA clearly immunized the State from constitutional torts, including constitutional torts arising from Article II, Sections 7 and 9 of the Oklahoma Constitution. *Id.* at 238-39. In *dicta*, the *Barrios* court stated, "[e]ven if not barred by sovereign immunity, [] it is doubtful that such claims would exist in the Oklahoma common law. Certainly nothing in the text of Article II, Sections 7 and 9 creates a tort cause of action for money damages as a remedy to vindicate violations of those rights . . . ." 432 P.3d at 239. The decision also noted that the Oklahoma Supreme Court has "never squarely held" that a claim for damages pursuant to Article II, Section 9 exists. *Id.*

Two years later, in *Payne v. Kerns*, the Oklahoma Supreme Court considered whether a prisoner who was detained beyond the expiration of his sentence had a private cause of action under Article II, Section 9 of the Oklahoma Constitution when his claim accrued prior to the OGTCA granting the state immunity from constitutional torts. 467 P.3d 659, 665-66 (Okla. 2020). The *Payne* court stated, "[s]ince 2002, this Court has recognized the potential for a private right of action for violations of Okla. Const. art. 2, §

14

9. We hold a private right of action [] exists for detention beyond the expiration of one's sentence under this section." *Id.* at 666. *Payne*'s holding suggests that, absent immunity, a state or municipal entity could be subject to a state constitutional tort claim for the denial of adequate medical care. *See id.*; *see also Washington v. Barry*, 55 P.3d 1036, 1039 (Okla. 2002) ("A prisoner in a penal institution has no right to recover for the use of excessive force by prison employees <u>unless</u> the force applied was so excessive that it violated the prisoner's right to be protected from the infliction of 'cruel or unusual punishments' under the state and federal constitutions.") (emphasis added).

Since Defendant Sheriff West in his individual capacity is not found, at this stage of the proceedings, to have immunity under the OGTCA, a claim for Ms. Hendrix's denial of adequate medical care may exist under Article II, Sections 7 and 9 of the Oklahoma Constitution. However, in light of the tension between *Barrios* and *Payne*, this court is not in a position to state definitively whether such a cause of action exists under Oklahoma law. Under 28 U.S.C. § 1367(c)(1), a federal district court may decline to exercise supplemental jurisdiction over a state law claim if it "raises a novel or complex issue of State law." *See also Patel v. Hall*, 849 F.3d 970, 988 (10th Cir. 2017) ("On remand, the district court should first reconsider whether it should decline to exercise pendent jurisdiction over the state law claims . . . in light of the limited nature of the sole remaining federal claim in this action and the arguable existence of some unsettled questions of state law."); *Wallin v. Dycus*, 224 F. App'x 734, 740 (10th Cir. 2007), *as amended nunc pro tunc* (Mar. 5, 2008) (affirming the district court's declining to exercise supplemental jurisdiction over state law claims when the case "raise[d] issues that have not yet been

explicitly addressed by the [state] courts").

On several occasions this court has declined to exercise supplemental jurisdiction over state law claims involving constitutional torts due to their complex and novel nature. *See, e.g.*, *Blankenship v. Stitt*, No. CIV-22-00958-PRW, 2024 WL 733654, at *7 (W.D. Okla. Feb. 22, 2024); *Poff v. Oklahoma Dep't of Hum. Servs.*, No. CIV-15-936-R, 2017 WL 2468978, at *3 (W.D. Okla. June 7, 2017); *Daffern v. Rhodes*, No. CIV-16-1025-C, 2016 WL 7429454, at *3 (W.D. Okla. Dec. 23, 2016). Because of the complexity of such claims, and especially considering recent state caselaw concerning the availability of state constitutional torts, this court should decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims against Defendant Sheriff West.

**VII. Recommended Ruling and Notice of Right to Object.**

Based on the foregoing findings, it is recommended that Defendant Sheriff Chris West's Partial Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 28), be **GRANTED in part and DENIED in part.** This recommendation leaves the following claims remaining in this action:

- deliberate indifference to serious medical needs in violation of the Fourteenth Amendment against Defendant Sheriff West in his individual and official capacities (Doc. 26, at 9-11); and
- gross negligence and intentional infliction of emotional distress under the OGTCA against Defendant Sheriff West in his individual capacity (*id.* at 14-15).

**The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court on or before April 1, 2024,** under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2). The

undersigned further advises the parties that failure to file a timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not terminate the referral in the present case.

ENTERED this 18th day of March, 2024.

*Amanda Maxfield Green*
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE